## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DAVID BRADFORD** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | ) **Case No.   15-cv-1405-JPG-SCW** |
| | ) |
| **SGT. KRAMER, et al.,** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

### <u>REPORT AND RECOMMENDATION</u>

**WILLIAMS, Magistrate Judge:**

#### INTRODUCTION

Plaintiff is a Federal detainee currently housed at the Alton Law Enforcement Center.   Acting *pro se*, Plaintiff brought the present suit pursuant to 28 U.S.C. § 1331. Plaintiff alleges the use of a "360 degree camera" in his cell violates his constitutional and certain statutory rights.   This matter is currently before the Court on Defendants' Motion for Summary Judgment (Doc. 22).   In support of their motion Defendants argue that Plaintiff failed to exhaust his administrative remedies as required by the Prisoner Litigation Reform Act, and, alternatively, that the undisputed facts surrounding the merits of Plaintiff's claim demonstrate Defendants are entitled to summary judgment. Plaintiff filed a Response to the motion and the Court held an evidentiary hearing on the issue of exhaustion.   As such, the motion is ripe for disposition.   For the reasons articulated below, the undersigned **RECOMMENDS** the district judge **GRANT in part**

**and DENY in part** Defendants' Motion for Summary Judgment (Doc. 22).

### SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment motions. The rule states that summary judgment is appropriate only if the admissible evidence considered as a whole shows there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *Archdiocese of Milwaukee v. Doe*, **743 F.3d 1101, 1105 (7th Cir. 2014) (citing FED.R.CIV.P. 56(a))**. The party seeking summary judgment bears the initial burden of demonstrating – based on the pleadings, affidavits and/or information obtained via discovery – the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, **477 U.S. 317, 323 (1986)**. A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Serednyj v. Beverly Healthcare, LLC*, **656 F.3d 540, 547 (7th Cir. 2011) (citing** *Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 248 (1986))**. *Accord Bunn v. Khoury Enterpr. Inc.*, **753 F.3d 676 (7th Cir. 2014)**.

In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Anderson v. Donahoe*, **699 F.3d 989, 994 (7th Cir. 2012);** *Righi v. SMC Corp.* , **632 F.3d 404, 408 (7th Cir. 2011);** *Delapaz v. Richardson*, **634 F.3d 895, 899 (7th Cir. 2011)**. As the Seventh Circuit has explained, as required by Rule 56(a), "we set forth the facts by examining the evidence in the light reasonably most favorable to the non-moving party, giving [him] the benefit of reasonable, favorable inferences and resolving conflicts in the

evidence in [his] favor." *Spaine v. Community Contacts, Inc.*, **756 F.3d 542 (7th Cir. 2014)**.

### FACTUAL AND PROCEDURAL BACKGROUND

### 1. Factual Background

Plaintiff David Bradford is a federal detainee who has been housed at the City of Alton Jail ("Alton Jail" or "Jail") since March 24, 2015. (Doc. 23-2, p. 1). At least some of the cells in the Alton Jail, including the one in which Plaintiff has been housed, contain surveillance cameras. (Doc. 10, p. 5; Doc. 23-2, p. 2). The area of the cell viewable by the cameras is disputed. According to Sgt. Gary Cranmer, the superintendent of the Alton Jail, the camera is stationary and does not allow the viewer to see the entire cell. (Doc. 23-2, p. 2). Sgt. Cranmer asserts that the cell cameras do not allow the viewer to see a detainee while he is using the toilet. (*Id.*). He also claims that the cell cameras are only monitored in a room adjacent to the cell block, that the cameras do not record, and that they cannot be viewed by casual observers. (*Id.*). Sgt. Cranmer also states that cameras are not utilized in the showers. (*Id.*). In support of their contention that the cell cameras do not capture all areas of the cell, Defendants provided with their motion a video recording showing a video monitor of a cell camera that Defendants state is identical to Plaintiff's. (*See* Doc. 24). Plaintiff claims he has not been able to see this video, however. (Doc. 27, p. 4).

Plaintiff disputes Sgt. Cranmer's characterization of the nature of the cell cameras. He claims that the cameras have "360 degree" viewing capability, and that at least part

of his body would be viewable in the toilet and sink area of the cell.   (Doc. 10, p. 5; Doc. 27, p. 3).   He also claims that the room where the video monitors are kept is heavily trafficked and that everyone employed at the Jail is in the room at some point.   (Doc. 27, p. 6).   He also alleges that anyone newly arrested can "look inside" the room while they are being booked.   (*Id.*).   Plaintiff alleges that as a Sunni Muslim, the use of the camera in his cell violates his religion.   (Doc. 10, p. 5).   He claims that, pursuant to his religion, it is not permissible for anyone other than his wife to see him naked.   (*Id.*)   Sgt. Cranmer states that the video surveillance system is necessary for the safety and wellbeing of both officers and prisoners, however.   (Doc. 23-2, p. 2).

The Alton Jail has a grievance procedure that allows the jail administration to attempt to resolve detainees' issues.   Under the first step of the procedure, the detainee shall orally raise the grievance with jail staff at the time the incident occurs.   (Doc. 23-1, p. 30).   Step one also requires the grievance be presented in writing within five days after the detainee became, or should have become, aware of the occurrence giving rise to the complaint.   (*Id.*).   The jail staff member to whom the grievance is directed must then provide an oral response to the detainee within five days.   (*Id.*).   If the grievance is not resolved in the first step, it must then be presented in writing to the jail superintendent within a particular five day timeframe.   (*Id.*).   The next step is an appeal to the Captain of Police, who is the final authority on the grievance (though the federal detainee may appeal to the United States Marshal's Service, which may or may not issue a response).   (*Id.* at 30 – 31).   Sgt. Cranmer, the Superintendent of the Alton

Jail, characterized the jail's grievance procedures as follows:

> Grievance, in essence, is a complaint that is typically reported to my staff initially, that being jailers.   If the incident cannot being [sic] remedied or rectified through them, they are given a Federal Prisoner Grievance Procedure Form, which is completed.   That, then is given to me, forwarded to me I should say, for my review and my response to it….
>
> …
>
> If it goes beyond me, it would go to the captain of the police department. That is Captain Scott Waldrup.

(Doc. 38, p. 7).

In their motion, Defendants claim that Plaintiff never filed a written grievance; however, Plaintiff claims that he did.   (Doc. 23, p. 2; Doc. 27, p. 7).   Therefore, on December 19, 2016, the undersigned held an evidentiary hearing on the issue of exhaustion of administrative remedies, pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008).

Plaintiff, along with Sgt. Cranmer, the Superintendent of the Alton Jail, both testified at the hearing.   Plaintiff testified that when he arrived at the Alton Jail in March 2015, he immediately noticed a camera in his cell.   (Doc. 38, p. 22 - 23).   He spoke to one of the guards about the camera, and the guard responded that there was nothing he could do about it, and Plaintiff would have to take the issue up with a supervisor.   (*Id.* at 23).   When Plaintiff asked for a grievance form that day, however, the guard never brought him one.   (*Id.*).   Sometime later, Plaintiff submitted a written grievance relating to the cell cameras along with a separate grievance relating to hygiene issues. (*Id.* at 23, 27).   These grievances were filed sometime after March 2015.   (*Id.* at 27, 28).

In an exchange with the Court, the Plaintiff gave testimony that was somewhat contradictory with his earlier testimony regarding the timing of his written grievance:

> THE COURT:   You filed the written grievance because the officer on duty said he couldn't do anything about that?
>
> MR. BRADFORD:   No, I filed the written grievance on my own, not because he said he couldn't do anything.   That was his response to my written grievance.

(*Id.* at 28).   Plaintiff testified that he filed his grievances by placing them in his cell door, and that, typically, one of the guards will pick them up.   (*Id.* at 28).   Plaintiff never received a written response to his grievance relating to the cameras.   (*Id.* at 25).

Sgt. Cranmer testified that once he received notice of the present lawsuit, he looked through Plaintiff's file to see whether any grievances relating to the issues raised in the suit had been filed.   (*Id.* at 9).   According to Cranmer, he found no grievances in Plaintiff's file at all.   (*Id.* at 9, 13 – 14).   Sgt. Cranmer testified that if a grievance form had been filled out, he would have issued a written response and made a copy to be placed in Plaintiff's file and returned a copy to Plaintiff.   (*Id.* at 9 – 10).

## 2.  Procedural Background

Plaintiff Bradford, along with several other detainees, filed suit, alleging the use of the cameras in their cells violated their constitutional rights.   (*See* Doc. 2).   Mr. Bradford's claims were severed from the original action, and were allowed to proceed in the present separate action against Defendants Sgt. Kramer, Robert Dewall, Evan Bailey,

Robert Ross, Colleen Moore, Unknown Parties[1], and Alton City Jail Superintendent in his official capacity[2].   (Doc. 1, p. 13; Doc. 12, p. 3).   Upon the merits review conducted by the district judge pursuant to 28 U.S.C. § 1915A, the following single count was allowed to proceed:

> **1.** **Defendants violated Plaintiff's rights under the First Amendment and/or the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.*, by using a "360 degree camera" to continuously monitor him in his cell, despite the fact that Plaintiff is a Sunni Muslim whose religious beliefs strictly prohibit anyone other than his wife from seeing him nude.**

(*Id.* at p. 3 – 4).

EXHAUSTION OF ADMINISTRATIVE REMEDIES

The undersigned first addresses Defendants' assertion that Plaintiff failed to exhaust his administrative remedies, since a failure to exhaust alone would require dismissal of the suit prior to addressing any merits issues.   A Motion for Summary Judgment filed pursuant to *Pavey* typically requires a hearing to determine any contested issues regarding exhaustion and a judge may make limited findings of fact at that time.   *Pavey v. Conley*, **544 F.3d 739, 742 (7th Cir. 2008).**   The case may proceed on the merits only after any contested issue of exhaustion is resolved.   *Pavey*, **544 F.3d at 742.**   While generally, the Court's role on summary judgment is not to evaluate the weight of the evidence, judge witness credibility, or determine the truth of the matter, but to determine whether a general issue of triable fact exists, a different standard

---

[1] The Unknown Parties were dismissed by District Judge Gilbert on September 6, 2016.   (Doc. 26).

[2] The Superintendent is currently Sgt. Cranmer.

applies to summary judgment on the issue of exhaustion.   *Nat'l Athletic Sportwear Inc.*

*v. Westfield Ins. Co.*, **528 F.3d 508, 512 (7th Cir. 2008)**.   In *Pavey*, the Seventh Circuit

held that "debatable factual issues relating to the defense of failure to exhaust

administrative remedies" are not required to be decided by a jury but are to be

determined by the judge.   *Pavey*, **544 F.3d at 740-41**.   In this instance, since the

undersigned found debatable factual issues, an evidentiary hearing was held.

### 1.   PLRA's Exhaustion Requirement

The affirmative defense of failure to exhaust depends on whether a plaintiff has

fulfilled the Prison Litigation Reform Act's (PLRA's) exhaustion requirement, which in

turn depends on the prison grievance procedures set forth by the Alton Law

Enforcement Center.   *See Jones v. Bock*, **549 U.S. 199, 218 (2007).**

The Prisoner Litigation Reform Act ("PLRA") provides that "no action shall be

brought [under federal law] with respect to prison conditions…by a prisoner…until

such administrative remedies as are available are exhausted."   **42 U.S.C. § 1997e(a)**.

Under the PLRA, exhaustion of administrative remedies is mandatory and unexhausted

claims cannot be brought in court.   *Jones*, **549 U.S. at 211.**   The case may proceed on the

merits only after any contested issue of exhaustion is resolved by the court.   *Pavey*, **544**

**F.3d at 742.**

The Seventh Circuit takes a strict compliance approach to exhaustion; requiring

inmates follow all grievance rules established by the correctional authority.   *Dole v.*

*Chandler*, **438 F.3d 804, 809 (7th Cir. 2006).**   A prisoner must therefore "file complaints

and appeals in the place, and at the time, the prison's rules require." *Pozo v. McCaughtry*, **268 F.3d 1022, 1025 (7th Cir. 2002).**   But the PLRA's plain language makes clear that an inmate is required to exhaust only those administrative remedies that are available to him.  **42 U.S.C. § 1997e(a).**   However, if the prisoner fails to follow the proper procedure, the grievance will not be considered exhausted.  *Pavey v. Conley*, **663 F.3d 899, 903 (7th Cir. 2011).**   The purpose of exhaustion is to give prison officials an opportunity to address the inmate's claims internally, prior to federal litigation.  *Kaba v. Stepp*, **458 F.3d 678, 684 (7th Cir. 2006).**

Additionally, exhaustion is a precondition to filing suit; a prisoner may not file suit in anticipation that his administrative remedies will soon become exhausted.  *Ford v. Johnson*, **362 F.3d 395, 398 (7th Cir. 2004).**   Rather, a prisoner must wait to bring a suit until after he completes the exhaustion process.  *Perez v. Wisconsin Dept. of Corrections*, **182 F.3d 532, 535 (7th Cir. 1999) (citing 42 U.S.C. § 1997e(a)).**   A suit that is filed prior to the exhaustion of remedies must be dismissed, even if a plaintiff's administrative remedies become exhausted during the pendency of the suit.  *Id.*

From the record, including the testimony provided at the evidentiary hearing, the undersigned is unable to find that Plaintiff failed to exhaust his administrative remedies. In support of their assertion that Plaintiff failed to exhaust, Defendants rely solely on Sgt. Cranmer's testimony that there were no grievances in Plaintiff's file.  Given that Plaintiff testified that he submitted a grievance, and given that there are no logs documenting the filing of detainee grievances in the record, the mere fact that no

grievances were found in Plaintiff's file is not sufficient for the undersigned to determine that Plaintiff did not file a grievance.   To be clear, the undersigned is not saying that Sgt. Cranmer is not credible.   Rather, the undersigned sees no reason to doubt Plaintiff's testimony, and, therefore, the logical conclusion is that for some reason the grievance did not make its way to Sgt. Cranmer after it was filed by Plaintiff.   In such a situation, Plaintiff has exhausted his administrative remedies as a matter of law, and he is not required to wait in futility for an indefinite period of time before filing suit.   *See Turley v. Rednour*, **729 F.3d 645, 650, n. 3 (7th Cir. 2013) (noting that when a prisoner fails to receive a response to a duly filed grievance due to an error by the prison, the Seventh Circuit has found the prisoner has exhausted)**.   In such a case, the Seventh Circuit has held that the grievance process was made "unavailable".   *See Lewis v. Washington*, **300 F.3d 829, 833 (7th Cir. 2002)**.

The undersigned acknowledges that Plaintiff provided somewhat contradictory testimony as to when he filed his grievance.   While Plaintiff first testified that he filed a grievance after having been told by a guard that the guard could not do anything about the cameras, he later testified that the guard's comment to him was his oral response *after* Plaintiff filed his written grievance.   The undersigned does not find this contradiction to render Plaintiff's testimony that he filed a grievance to be without credibility, however, and nor does it constitute grounds for finding that Plaintiff failed to follow the Jail's grievance procedures.[3]

---

[3] The undersigned finds the Jail's grievance procedures to be somewhat confusing.

In sum, Defendants based the "failure to exhaust" portion of their motion on the argument that Plaintiff failed to submit any written grievance due to the fact that Sgt. Cranmer could not find any grievances in Plaintiff's file.    From these facts, however, the undersigned cannot find that Plaintiff failed to file a grievance and, therefore, failed to exhaust his administrative remedies.    As such, summary judgment on the grounds that Plaintiff failed to exhaust his administrative remedies provided by the Alton Jail is not appropriate.

SUMMARY JUDGMENT ON THE MERITS

1.  **Plaintiff's Free Exercise Claim**

The First Amendment to the United States Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." **U.S. CONST. amend. I**.   The amendment has been incorporated to the states through the Fourteenth Amendment Due Process Clause, ***Cantwell v. Connecticut*, 310 U.S. 296, 303 – 04 (1940)**.   The Constitution's religious protections extend to incarcerated inmates; however, their rights are not absolute.   ***Ortiz v. Downey*, 561 F.3d 664, 669 (7th Cir. 2009)**.   In the First Amendment context, a prisoner's right to freely exercise his religion "does not depend on his ability to pursue each and every aspect of the practice of his religion."   ***Canedy v. Boardman*, 91 F.3d 30, 33 (7th Cir. 1996) ("*Canedy II*")**.

In order to prevail on a claim under the Free Exercise Clause, a plaintiff must demonstrate that his right to practice his chosen religion was "burdened in a significant

way." *Kaufman v. McCaughtry*, **419 F.3d 678, 683 (7th Cir. 2005)**.   However, unlike RLUIPA, discussed below, a prison practice or policy will not violate the First Amendment if it is one of "neutral and general applicability", *see Koger v. Bryan*, **523 F.3d 789, 797 (7th Cir. 2008);** *see also Mark v. Gustafson*, **286 Fed.Appx. 309, 312 (7th Cir. 2008)**, or where the policy or regulation was reasonably related to a legitimate penological objective, *Kramer v. Pollard*, **497 Fed.Appx. 639, 642 (7th Cir. 2012);** *Maddox v. Love*, **655 F.3d 709, 719 (7th Cir. 2011)**; *Ortiz v. Downey*, **561 F.3d 664, 669 (7th Cir. 2009)**.

In determining whether a prison or jail policy is constitutional, courts look to four factors: "(1) whether the restriction is rationally related to a legitimate and neutral governmental objective; (2) whether there are alternative means of exercising the right that remain open to the inmate; (3) what impact an accommodation of the asserted right will have on guards and other inmates; and (4) whether there are obvious alternatives to the restriction that show that it is an exaggerated response to penological concerns." *Kramer*, **497 Fed.Appx. at 643 (quoting** *Ortiz*, **561 F.3d at 669) (internal quotations omitted)**.   The Seventh Circuit applies this standard regardless of whether the plaintiff is a pretrial detainee or an inmate incarcerated after conviction.   *Compare Ortiz*, **561 F.3d at 669 (pretrial detainee),** *and Tarpley v. Allen County, Indiana*, **312 F.3d 895, 898 (7th Cir. 2002) (pretrial detainee),** *with Kramer*, **497 Fed.Appx. at 642 – 43 (state inmate),** *and Maddox*, **655 F.3d at 719 (state inmate)**.

Though Defendants provided the Court with a video purporting to show the

video monitoring screens for cell cameras, since Plaintiff was not able to view the video and respond to it, the undersigned does not consider the video in making his recommendation.   The video aside, factual issues exist as to the viewing range of the cell cameras.   Viewing the disputed facts in Plaintiff's favor, for purposes of this motion, the undersigned accepts as true Plaintiff's purported facts that the cameras are 360 degrees and that he can be seen on the cameras while using the toilet.

Nonetheless, even when viewing the disputed facts in his favor, Plaintiff cannot recover as a matter of law on his First Amendment claim, since, as Defendants argue, there is a legitimate penological interest in maintaining cell cameras at the Jail.   This determination is demonstrated in examining each of the four factors applied by the Seventh Circuit in turn.   First, the use of cell cameras is rationally related to the City of Alton's interest in constantly observing the detainees in its jail.   The Seventh Circuit has found that a prison has a "very strong interest in having its guards observe prisoners at all times and in all situations".   *Canedy II, supra,* **at 34**.   It is obvious that the reason for this interest is that constant observation provides for a more secure facility, *see Canedy v. Boardman,* **16 F.3d 183, 186 (7th Cir. 1994)** (*"Canedy I"*) **(in suit relating to constitutionality of female guards observing male inmates in states of undress and during private settings, court noted that "prison officials have an obvious interest in security")**, and Sgt. Cranmer indicates the purpose of the cell cameras is indeed for the safety and wellbeing of those working at and held within the Jail.   Though, in his Response, Plaintiff asks the rhetorical question of why his religious rights should be

pushed aside when there is no security threat in the Jail, he has provided no evidence to suggest a lack of a security threat at the Alton Jail.   In fact, any notion that a jail is wholly void of security and safety threats is completely without credibility and is separated from common sense.   Nor does the record contain any evidence to suggest that the cell cameras are used for any purpose other than safety and security.   For instance, if the Jail were broadcasting the images captured by the cameras on the internet, Plaintiff would have a stronger position.   *See Demery v. Arpaio***, 378 F.3d 1020 (9th Cir. 2004) (use of cameras streaming video of jailed detainees onto the internet violated detainees' rights)**. There is no evidence in the record, however, to indicate that the cell cameras are being used in such a manner.   Simply put, in the case at bar, the use of cameras in detainees' cells that observe all parts of the cell is clearly in furtherance of the Jail's "very strong" interest in constant observation of the detainees.

A discussion of the impact on jail staff and other detainees stemming from an accommodation of Plaintiff's religious right follows naturally from an examination of the Jail's interest in constant observation of detainees for security purposes.   The accommodation sought by Plaintiff is removal of the cell cameras.   He suggests that Defendants should rely on 30 minute walkthroughs, which are less intrusive, and would allow Plaintiff the time to use the toilet in his cell without being observed.   Though not squarely addressed by Defendants, common sense dictates that the problem with this position is that while the walkthroughs would allow a detainee to use the toilet without being observed, without the cell cameras, an unobserved detainee could also have the

opportunity to devise a means to hurt not only guards and other inmates, but also himself.[4]   Any accommodation of Plaintiff's right at issue would result in him being unobserved by jail staff for a period of time.   Defendants operating the Jail clearly believe that any such accommodation would pose a risk to the security and safety of jail staff and detainees, and the undersigned sees no reason to dispute this position.   Courts should not become bogged down in overseeing the day-to-day operations of prisons and jails, *see Sandin v. Conner*, **515 U.S. 472, 483 (1995)**, and Alton Jail officials should be given latitude in implementing measures that they truly believe are necessary to preserve the safety and security of the Jail.

Third, there are no obvious alternatives that would demonstrate that the use of cell cameras is an exaggerated response to the Jail's penological interests.   As already discussed, any alternatives that would result in Plaintiff being unobserved for a period of time would raise security issues.   Therefore, any alternative would have to allow for jail staff to still constantly observe Plaintiff.   For instance, Defendants argue in their Motion that if required to remove the cell cameras, they would have to visually observe every detainee.   Regardless of whether he is constantly observed via video or by a guard in person, the undersigned sees little difference in the effect on Plaintiff's right. In fact, there is likely no alternative that would allow Jail staff to constantly observe

---

[4] Additionally, unobserved detainees, such as Plaintiff, could devise a way to escape.  In fact, the undersigned notes that at least one detainee has escaped from the Alton Jail in recent years.  *See* **Sarah Whitney**, *Warrenton Woman Sentenced for Assisting in Jail Break* St. Louis Post-Dispatch **(Aug. 6, 2008)**, http://www.stltoday.com/suburban-journals/warrenton-woman-sentenced-for-assisting-in-jail-break/article_12702d60-b627-5a8d-b5fa-24b4fd276c6f.html .

Plaintiff without offending his right.

Plaintiff states that the images captured by the cell cameras are recorded; however, there is no evidence in the record to support this claim.   This claim is largely based on the video provided by Defendants in support of their motion.   Plaintiff has not seen this video, however, and Sgt. Cranmer states in his affidavit that the cell camera images are not recorded.   While Plaintiff's contention that video exhibit is proof that the cell cameras do in fact record what goes on in the cells, the video is actually a recording of a monitor, which is visible in the recording.   In other words, someone used a video recording device and recorded what was being shown on the video monitor at the jail. While the undersigned does not consider the video in regards to the question of the viewable range of the cell cameras, it is safe to say that no reasonable juror could find that the video demonstrates the Jail records what goes on in its cells.   As such, there is no evidence in the record that the Jail is recording what is captured by the cell cameras.

While Sgt. Cranmer states that the cell cameras are only monitored in a room adjacent to the cell block and cannot be viewed by casual observers, Plaintiff states that the location of the video monitors is such that they can be viewed by anyone working at the Jail, as well as, any other member of the City of Alton who may come to the Jail, including detectives and maintenance workers.   He also states that anyone brought in for booking after an arrest can "look inside" the room and see the monitors.   Plaintiff does not get into specifics regarding the ability for those not inside room to see the monitors, however.   Regardless, taking Plaintiff's statements here as true, they do not

demonstrate the use of cell cameras to be an "over exaggerated" response to the Jail's interest in security.   Plaintiff does not claim the monitors are viewable to the general public.    Rather, he states that the monitors are able to be viewed by a particular group of people, all of whom have legitimate reasons for being inside the Jail.    As a detainee at the Jail, Plaintiff simply has no right to privacy.  *See Johnson v. Phelan,* **69 F.3d 144, 146 (7th Cir 1995) (citing** *Hudson v. Palmer*, **568 U.S. 517, 526 – 30 (1984))**.   That he is possibly able to be viewed in the nude in his cell by individuals with legitimate reasons to be present at the Alton Jail does not demonstrate that Defendants have gone too far in implementing the use of cell cameras.

Finally, though not really addressed by the parties, it is the case that Plaintiff has no real alternatives in exercising the religious right restricted in this instance.   Taking Plaintiff's facts as true, with a cell camera that covers all areas of his cell, it appears that Plaintiff has no ability to prevent himself from being viewed during private occurrences such as when uses the toilet.   The other factors already discussed, however, weigh heavily in the Defendants' favor.   Defendants have a very strong interest in constantly observing Plaintiff for safety and security purposes, and the use of cell cameras is clearly in furtherance of that interest.   There is no accommodation to Plaintiff's right that could be implemented without compromising that interest, and there is no evidence to suggest that the use of the cameras is an over exaggerated response on the part of Defendants. The aforementioned factors in favor of the Defendants strongly outweigh the single factor in Plaintiff's favor.   Therefore, the undersigned finds that Summary Judgment is

appropriate as to Plaintiff's First Amendment Claim.

## 2. RLUIPA

Defendants also argue they are entitled to summary judgment on Plaintiff's RLUIPA claim.   The Religious Land Use and Institutionalized Persons Act ("RLUIPA") prohibits prison officials from imposing a "substantial burden on the religious exercise of a person" unless the prison can demonstrate that the burden is "in furtherance of a compelling governmental interest" and is also "the least restrictive means of furthering that compelling governmental interest." **42 U.S.C. § 2000cc(a)(1)**.   "Religious exercise" includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." ***Id.* at § 2000cc-5(7)(A)**.   The exercise sought must be based on a sincerely held religious belief and not some other motivation. ***Holt v. Hobbs*, 135 S.Ct. 853, 862, 190 L.Ed.2d 747 (2015) (citing *Burwell v. Hobby Lobby Stores, Inc.*, 134 S.Ct. 2751, 2774, n. 28, 189 L.Ed.2d 675 (2014))**.   Under RLUIPA's burden shifting regime, initially, a plaintiff has the burden to demonstrate that his exercise of religion has been substantially burdened. ***Holt*, 135 S.Ct. at 862, 63**.   A substantial burden exists if a state action or prohibition "seriously violates" an inmate's religious beliefs. ***Schlemm v. Wall*, 784 F.3d 362, 364 (7th Cir. 2015) (quoting *Holt*, 135 S.Ct. at 862)**.   If a plaintiff meets his burden, the burden then shifts to the defendants to demonstrate both a compelling governmental interest and that the act or prohibition in question was the least restrictive means of furthering that interest. ***Holt*, 135 S.Ct. at 863**.

While Plaintiff cannot recover under his First Amendment claim, the Defendants'

burden under RLUIPA is a more difficult one to meet, and from the record, the undersigned cannot say that Defendants are entitled to summary judgment. Defendants do not specifically argue that Plaintiff's religious beliefs are insincere or that the jail staff's ability to constantly observe him via the cell cameras does not substantially burden his religious beliefs.   The undersigned, therefore, assumes these portions of the RLUIPA analysis fall in Plaintiff's column.   The burden, then, is on Defendants to demonstrate that the use of cell cameras is the least restrictive means in furtherance of a compelling government interest.

As previously mentioned, jails and prisons have a "very strong" interest in safety and security within their institutions, and it is safe to say that this interest in indeed "compelling."   *See Andreola v. Wisconsin*, **211 Fed. Appx. 495, 498 – 99 (7th Cir. 2006) (noting previous findings that security within a prison is a compelling state interest and applying it to jails) (citing** *Borzych v. Frank*, **439 F.3d 388, 390 – 91 (7th Cir. 2006);** *Reynolds v. City of Anchorage*, **379 F.3d 358, 362 (6th Cir. 2004);** *Holly v. Woolfolk*, **415 F.3d 678, 679 (7th Cir. 2005))**.   The question then is whether the use of cell cameras is the least restrictive means in furtherance of this interest.   In addressing this question, aside from their assertions regarding the area viewable by the cell cameras, Defendants rely on the fact that the cameras do not record, that video monitoring is not used in the shower facilities, and that they would have to conduct visual observations even without the use of cell cameras.   Defendants argue that even if the cameras were removed, it is likely that detainees would still be observed in the nude.   The undersigned agrees.   As

previously discussed, with or without the use of a cell camera, security demands that Plaintiff be seen in the nude by someone other than his wife.   In a jail there is no getting around this fact.   What Defendants must demonstrate under RLUIPA, however, is that their method of constantly observing Plaintiff is the *least restrictive means* in furtherance of their interest in security.   While the undersigned does not believe that the use of cell cameras *per se* violate RLUIPA, there is a question of fact as to whether the placement of camera monitors renders the camera usage in this instance the least restrictive means in furtherance of a security interest.   While Sgt. Cranmer states that these monitors cannot be seen by casual observers, Plaintiff states that anyone being brought in for booking after an arrest can "look in" and view the monitors.   Viewing the facts reasonably in Plaintiff's favor, if an individual can see the cell camera monitor, and an image of Plaintiff nude, while he or she is being booked, and if the Jail can reasonably prevent this by moving or covering the monitor etc., then Plaintiff's rights under RLUIPA may be violated.   The undersigned cannot make a determination on this issue one way or the other, with the record before him, however.   It may very well be that the Jail has done all it can in regards to placing the monitor outside the view of those coming into the Jail; however the record is not sufficiently developed to allow the undersigned to make that determination.   Therefore, summary judgment as to Plaintiff's RLUIPA claim is not appropriate, and this matter should proceed to determine the facts surrounding the placement of the monitor in the Alton Jail and its capability to be seen by those being brought into the jail.   The undersigned notes that since Plaintiff cannot recover money

damages under RLUIPA, the case would proceed only for purposes of injunctive relief. *See Johnson v. Bailey*, **3:10-cv-00135-SCW, 2013 WL 1308720, \*2 (S.D. Il. March 30, 2013)**.

CONCLUSION

While Defendants cannot demonstrate that Plaintiff failed to exhaust his administrative remedies, they have demonstrated that they are entitled to summary judgment as to the merits of Plaintiff's First Amendment claim.   However, factual issues exist as to whether the placement of the cell camera monitors violates RLUIPA. Therefore, the undersigned **RECOMMENDS** that Defendants' Motion for Summary Judgment for failure to exhaust be **DENIED**.   It is further **RECOMMENDED**, however, that the Motion be **GRANTED** as to the merits of Plaintiff's First Amendment claim and that it be **DENIED** as to his RLUIPA claim.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1(b), the parties may object to any or all of the proposed dispositive findings in this Recommendation. The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *See, e.g., Snyder v. Nolen*, **380 F.3d 279, 284 (7th Cir. 2004)**. Accordingly, Objections to this Report and Recommendation must be filed on or before **February 13, 2017**.

      **IT IS SO ORDERED**.
DATED: 1/27/2017

                                          */s/ Stephen C. Williams*
                                          STEPHEN C. WILLIAMS
                                          United States Magistrate Judge